IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHERYL LACHER, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:23-CV-00551-ALM-AGD |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Cheryl Lacher brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the court recommends that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings.

### I. PROCEDURAL HISTORY

On December 27, 2019, Plaintiff Cheryl Lacher ("Plaintiff") filed an application for supplemental security income under Title XVI of the Social Security Act (TR 17). Plaintiff's alleged onset of disability date was December 12, 2019 (TR 17). On April 7, 2020, Plaintiff's claim was initially denied (TR 85), and upon reconsideration on December 22, 2021, Plaintiff's claim was again denied (TR 100). Plaintiff requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on August 15, 2022 (TR 31). At the hearing, the ALJ heard testimony from Plaintiff, Plaintiff's attorney representative, and a vocational expert ("VE") (TR 31). On October 17, 2022, the ALJ issued an unfavorable decision denying Plaintiff's application (TR 17–26). On the same date, Plaintiff requested review of the ALJ's decision by the

Appeals Council ("AC") (TR 7). On May 2, 2023, the Administrative Appeals Judge denied Plaintiff's request for review, making the decision of the ALJ final (TR 1).

## II.  STATEMENT OF RELEVANT FACTS

### 1. Age, Education, and Work Experience

Plaintiff was born on September 20, 1965, making her 54 years of age at the time of the alleged onset of her disability (TR 67). Plaintiff's age classification at that time was "closely approaching advanced age" (TR 67); *see* 20 C.F.R. § 404.1563(d). Plaintiff's age classification subsequently changed age category to "advanced age" when she turned 55 in September of 2020 (TR 67); *see* 20 C.F.R. § 404.1563(e). Plaintiff completed high school through the eleventh grade (TR 38). Plaintiff worked as a payroll clerk from 2000–2010 (TR 220). Plaintiff has not engaged in substantial gainful activity since December 27, 2019, the alleged onset date of her disability (TR at 19).

### 2. Relevant Medical Records

Plaintiff alleges disability due to neuropathy, memory loss, and depression (TR 90). Relevant to these conditions and the arguments raised by Plaintiff are the medical opinions and evaluations from provider Dr. Mark Mashni, DPM[1] ("Dr. Mashni"), as summarized below.[2]

#### a. Dr. Mark Mashni, DPM

On August 11, 2022, Plaintiff was seen by Dr. Mashni at Southwest Foot and Ankle Center for complaints of bilateral foot pain (TR 703). Dr. Mashni reported that Plaintiff had no edema of the lower extremities (TR 705). Plaintiff's pedal pulses were 2+ and symmetrical (TR 705).

---

[1] In their Briefs, the Parties refer to "Dr. Mashni" or "NP Mashni" (Dkt. #16; Dkt. #18). Because the ALJ's decision refers to "Dr. Mashni" as a "doctor of podiatric medicine" the court refers to him as Dr. Mashni.

[2] Other medical professionals noted in the transcript include Cindy Taylor, Ph.D., Jennifer Do, Ph.D., Betty Santiago, M.D., Nancy Wilson, Ph.D., William Vencill, PA, Mitchell Williams, DPM, and Steven Burkey, DPM.

Plaintiff's lower extremity muscle strength and range of motion were equal and symmetrical bilaterally (TR 705). Plaintiff's knees were in normal alignment (TR 705). Ankle alignment, range of motion, foot structure and gait were normal (TR 705). Plaintiff's deep tendon reflexes of the right were graded at 2/4 (TR 705). Plaintiff's plantar reflexes revealed toes were down-going, and there was no ankle clonus (TR 705). Dr. Mashni reported that sensory testing of the lower extremities was diminished (TR 705). Plaintiff was given an assessment of type II diabetes with diabetic autonomic polyneuropathy, other idiopathic peripheral autonomic neuropathy, pain in the right and left foot, and generalized edema (TR 705).

The same day, Dr. Mashni completed a physical functional capacity report for Plaintiff in connection with her diabetic care check-up (TR 588). Dr. Mashni reported that Plaintiff had neuropathy (TR 588). Dr. Mashni further asserted that Plaintiff was able to lift and carry 20 pounds occasionally and 25 pounds frequently (TR 589). Plaintiff could stand and/or walk for fewer than two hours in an eight-hour workday (TR 589). Plaintiff could sit for fewer than about six hours in an eight-hour workday (TR 589). Plaintiff's ability to push and pull was limited in the lower extremities (TR 589). Plaintiff could never climb ramps and stairs, ladders, ropes, and/or scaffolds, and could never crawl (TR 590). Plaintiff could occasionally balance, stoop, kneel, and crouch (TR 590). Plaintiff could occasionally reach all directions, handle, finger, and feel (TR 590). Plaintiff would be absent from work once a month. Plaintiff would be off task 5% of the workday (TR 590).

### 3. *Hearing Testimony*

On August 15, 2022, the ALJ held a Hearing (TR 31–55). At the Hearing, the ALJ and Plaintiff's attorney questioned Plaintiff and the VE (TR 31–55).

### a. Plaintiff's Testimony

In response to the ALJ and her attorney, Plaintiff answered questions regarding her personal life, work history, symptoms, and limitations related to work and engaging in daily activities (TR 35–48). With respect to her physical health, Plaintiff testified that due to neuropathy in the lower extremities, Plaintiff can fall at any time while walking (TR 38). Plaintiff had not driven in approximately two years at the time of the Hearing because of her blurry vision (TR 37). Plaintiff can sit for three hours before she experiences pain in her lower back (TR 39). Plaintiff can walk for ten minutes before her ankles begin to swell and she needs to get off her feet (TR 39). Typically, Plaintiff spends more than half of the day with her ankles elevated in a recliner (TR 39). On one occasion, when Plaintiff had to wait over a week for her medication, she ended up crying in pain while lying in her recliner (TR 40). Plaintiff experiences memory loss, noting that she cannot remember how to do things like crochet (TR 41). Aside from neuropathy, Plaintiff also experiences dizziness and sleepiness because of her diabetes (TR 42). The heaviest weight Plaintiff can hold in one hand is five pounds (TR 43). Plaintiff will sometimes run out of breath for five minutes after walking across a room and bending over to pick something up (TR 44). She experiences depression, which makes her tired and prone to falling asleep (TR 42–43). Plaintiff risks falling over if she bends at the knees (TR 47).

With respect to her work history, Plaintiff testified that she worked as a payroll clerk from 2001 through 2009 (TR 45). She worked 40 hours per week, Monday through Friday (TR 45). Plaintiff was terminated because of absences related to her husband's health.

### b. VE's Testimony

The VE testified about Plaintiff's past employment history, noting that Plaintiff worked as a payroll clerk, which is classified as a semi-skilled, sedentary position (TR 49). The ALJ posed

REPORT AND RECOMMENDATION - Page 4

three hypotheticals to the VE and asked whether a person with such limitations in the hypotheticals could perform Plaintiff's past relevant work (TR 49–53). The VE testified that an individual with the limitations in the first hypothetical would be able to perform Plaintiff's past work and had job options in the national economy:

> Q: Okay. With those considerations in mind, ma'am, I ask you first to assume a hypothetical individual of the claimant's age, education and work history who is limited exertionally to lift, carry, push, pull occasionally 50 pounds, frequently 25 pounds, sit for six hours, stand and walk a total of six hours. Foot controls right and left are both frequent. Manipulatives, reaching overhead right and left are both frequent. Posturals, climbing ramps and stairs frequently, ladders, ropes or scaffolds occasionally. Balance, stoop and kneel are frequent, crouch and crawl are occasional. Environmental, occasional exposure to unprotected heights, frequent operation of a motor vehicle, frequent exposures to extremes of cold and heat, frequent exposure to vibration. Off task time is five percent of an eight-hour workday in addition to normal work breaks. Could this hypothetical individual do the past work you described either as actually or generally performed in the national economy?
>
> A: Yes, sir, to both.
>
> Q: Could this hypothetical individual do any other work? If so, could you give me a few examples with numbers of jobs for each occupation?
>
> A: Yes, sir. Examples of occupations would include medium, unskilled floor waxer, DOT code 381.687-034, SVP-2. Existing with the U.S. are 110,000 positions. Medium, unskilled, change house attendant, DOT code 358.687-010, SVP-2. Existing within the U.S. are 63,000 positions. And, medium, unskilled bagger positions, DOT code 920.687-014, SVP-2, existing within the U.S. are 71,000 positions.
>
> Q: Is your testimony consistent with the Dictionary of Occupational Titles, ma'am.
>
> A: Yes, sir.

(TR 49–50). In response to the first hypothetical, Plaintiff's attorney questioned the VE:

> Q: How much can an employee be off task and still maintain gainful employment?
>
> A: Up to ten percent.

> Q: All right, and how many days can an employee miss per month and still maintain gainful employment?
>
> A: Generally one day per month.
>
> Q: All right, would there be any work at the semi-skilled level for a person that is only able to carry out short and simple instructions?
>
> A: No, sir.

(TR 51). Next, the VE testified that an individual with the limitations in the second hypothetical had job options in the national economy:

> Q: All right. Next, ma'am, please assume a hypothetical individual of the claimant's age, education and work history who is limited exertionally to lift, carry, push, pull occasionally 20 pounds, frequently ten pounds. As before, sit for six hours, stand and walk a total of six hours. Foot controls right and left are both occasional. Manipulative, reaching overhead is unchanged at frequent. Likewise unchanged are the preceding identified postural and environmental limitations. As before, this person would be off task five percent of an eight-hour workday in addition to normal breaks. Could this hypothetical individual do the past work you described, ma'am, either as actually or generally performed in the national economy?
>
> A: Yes, sir, to both.
>
> Q: Could this hypothetical individual do any other work in the competitive economy? If so, can you give me a few examples with numbers of jobs for each occupation?
>
> A: Yes, sir. Examples of occupations would include light, unskilled marker positions, DOT code 209.587-034, SVP-2. Existing within the U.S. are 227,000 positions. Light, unskilled routing clerk, DOT code 222.687-022, SVP-2. Existing within the U.S. are 118,000 positions. And, light, unskilled housekeeping cleaner positions, DOT code 323.687-014, SVP-2. Existing within the U.S. for 194,000 positions.
>
> Q: Is your testimony consistent with the Dictionary of Occupational Titles, ma'am?
>
> A: Yes, sir, with the clarification that the DOT does not address the issues of being off task and my testimony in response to that question in both hypothetical one and two is based on my review of appropriate literature, education, training and professional experience.

(TR 51–52). With respect to the third hypothetical, the VE testified that the hypothetical individual could not do the past work described, but that an individual with the limitations in the third hypothetical had job options in the national economy:

> Q: ALJ: Okay. Next, Ms. Harris, if you will, please, assume a hypothetical individual of the claimant's age, education and work history who is limited as identified in the preceding hypothetical except in the following particulars. Those being communication, able to hear and understand simple oral instruction, understand, remember and carry out instructions and able to perform simple, routine tasks. Able to interact with supervisors and coworkers frequently, the public occasionally. Dealing with changes in work setting, able to make simple work-related decisions. Off task time here is fewer than ten percent of an eight-hour workday, absent from work one day monthly routinely. Could this hypothetical individual do the past work you described, ma'am, either as actually or generally performed in the national economy?
>
> A: No, sir.
>
> Q: Why is that, ma'am?
>
> A: The past work was semi-skilled. That would exceed the simple, routine tasks, as well as simple instructions.
>
> Q: Could this hypothetical individual do any other work, ma'am? If so, could you give me a few examples and numbers of jobs for each occupation?
>
> A: Yes, sir. Housekeeping cleaner, DOT code 323.687-014, SVP-2. Existing within the U.S. are 194,000 positions. Routing clerk, DOT code 222.687-022, SVP-2. Existing within the U.S. are 118,000 positions. And, marker positions, DOT code 209.587-034, SVP-2. Existing within the U.S. for 227,000 positions.
>
> Q: Is your testimony consistent with the Dictionary of Occupational Titles, ma'am?
>
> A: Yes, sir, with the clarification that the DOT is silent on off task and absenteeism and my testimony regarding those two issues I based on my review of appropriate literature, my education, training and professional experience.

(TR 52–54).

### III. FINDINGS OF THE ALJ

#### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* at § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id.* at § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* at § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* at § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

#### 2. *The ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation (TR 19–26). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 27, 2019, the date of alleged onset of her disability (TR 19). At step two, the ALJ found that Plaintiff has severe impairments for diabetes

mellitus with neuropathy and multi-focal degenerative joint disease/osteoarthritis (TR 19). At step three, the ALJ found Plaintiff "has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (TR 21). At step four, the ALJ determined that Plaintiff has the following RFC:

> After careful consideration of the entire record, I find that the claimant has the RFC to perform less than the full range of light work, as defined in 20 CFR 416.967(b), of lifting, carrying, pushing and/or pulling 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, she can sit for 6 hours and stand/walk for 6 hours. She can occasionally operate foot controls bilaterally. She can frequently reach overhead bilaterally. She can frequently balance, stoop, kneel, and/or climb ramps and stairs, while she can occasionally crouch, crawl, and/or climb ladders, ropes and/or scaffolds. She can occasionally work at unprotected heights and can frequently operate a motor vehicle. She can frequently have exposure to vibration as wells of extreme cold/heat. In addition to normal breaks, the claimant will be off task 5% of time in an 8-hour workday.

(TR 21). Continuing the step four analysis, the ALJ determined that Plaintiff is able to perform past relevant work (TR 24). Finally, at step five, the ALJ determined that "considering the claimant's age, education, work experience, and RFC, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (TR 26). The ALJ found that, based on the VE's testimony, Plaintiff would be able to perform the following work:

(1) Marker positions, DOT No. 209.587-034, of which there are approximately 227,000 jobs nationally;

(2) Routing clerk, DOT No. 222.687-022, of which there are approximately 118,000 jobs nationally; and,

(3) Housekeeping/cleaner positions, DOT No. 323.687-014, of which there are approximately 194,000 jobs nationally.

(TR 25–26). Based on this determination, the ALJ concluded Plaintiff has not been under a disability since December 27, 2019, the date the application was filed (TR 26).

## IV. STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 19 F.4th at 718 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Social Security Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## V. ANALYSIS

The central issue raised by Plaintiff is that "the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error where [he] failed to properly evaluate the

opinion of NP Mashni." (Dkt. #16 at p. 5). Specifically, Plaintiff alleges that, with respect to Dr. Mashni, "the ALJ's discussion fails to consider the consistency factor, as required by the regulations." (Dkt. #16). Further, Plaintiff argues that the "ALJ's analysis lacked a discernable comparison between [] NP Mashni's opinion and other evidence from the medical record, despite some clear similarities." (Dkt. #16 at p. 8). In response, the Commissioner argues that "the ALJ properly addressed the persuasiveness, supportability, and consistency of the opinions by comparing the opinion of NP Mashni to contrary medical evidence of record." (Dkt. #18 at p. 8). The Commissioner further argues that the comparison between the medical evidence of record goes to the ALJ's consistency analysis. *See* (Dkt. #18 at p. 7) ("Dr. Taylor's opinion was persuasive because it was consistent with the relevant medial record, and Dr. Mashni's opinion was not consistent with the relevant medical record.").

Here, the court finds that the ALJ did not sufficiently support his conclusion with respect to Dr. Mashni, and as such, finds that the ALJ failed to use the proper legal standards. Because the court finds that this error was harmful, the court recommends that the case be reversed and remanded for further proceedings.

### 1. *Review of RFC Determination*

Generally, the RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite her impairments.[3] 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional

---

[3] When considering a claimant's RFC, the Commissioner assesses an applicant's physical, mental, and sensory abilities, evaluates how those abilities apply to that applicant's work-related functioning, and finally considers whether that applicant can sustain work-related activities in a work setting on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b)–(d).

capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ is not required to incorporate limitations in the RFC she finds unsupported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). The inquiry for the court is "whether the record as a whole yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations she expressed). The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically articulate all the evidence that supports her decision, or all the evidence that she rejected. *See Falco v. Shalala*, 27 F.3d 160, 163–64 (5th Cir. 1994) ("The ALJ is bound by the rules of this Court to explain her reasons for rejecting a claimant's complaints of pain. He did so. That she did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.").

### 2. Assessment of Medical Opinion Evidence

The Social Security Administration's new rule for assessing medical opinion evidence governs all claims filed on or after March 27, 2017, including Plaintiff's here. *See* 20 C.F.R. § 404.1520c. The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. *Id.* at § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating

physicians. *Id.* at § 404.1520c(a). A medical opinion is a statement about what functional limits a claimant may have from an impairment. *Id.* at § 404.1513(a)(2).

The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." *Id.* at § 404.1520c(a).[4] Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. *Id.* at § 404.1520c(a), (c)(1)–(5). However, supportability and consistency are the most important factors. *See id.* at § 404.1520c(a). Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the record. *Id.* at § 404.1520c(c)(1)–(2).[5] The new rule also changed the articulation requirements for how the ALJ considers each medical opinion. The new articulation requirements state:

---

[4] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

[5] "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Id.* at § 404.1520c(b)(1)-(2); *Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021).

### a. The ALJ did not properly address the consistency factor with respect to Dr. Mashni.

"[A]t minimum, ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions ... in [a claimant's] case record." *Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *report and recommendation adopted*, No. 4:20-CV-01122-O-BP, 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022) (citing 20 C.F.R. § 404.1520c(b)). "While ALJs need not exhaustively explain their reasoning, they must "explain how [they] considered the supportability and consistency factors for ... medical opinions ... in [a claimant's] determination or decision." *Id.* This requirement is obligatory. *Id.*

Here, the ALJ failed to address the consistency factor with respect to Dr. Mashni's opinion. The entirety of the ALJ's analysis of Dr. Mashni's opinion reads:

> I find the opinion of Dr. Mashni at Exhibit 9F unpersuasive because it is based on a single office visit, and the underlying office visit notes in Exhibit 10F contain no corresponding functional analysis to predicate the limitations and assessment documented.

---

*Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021).

REPORT AND RECOMMENDATION - Page 14

(TR 24). The ALJ thus does not indicate whether or to what degree Dr. Mashni's opinion is consistent with the evidence from other sources in the claim. 20 C.F.R. § 404.1520c. Because the consistency analysis is "obligatory," the ALJ's failure to address it is error. *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3, n.2 (5th Cir. Jan. 18, 2023) (finding error when the ALJ's report "provide[d] no explanation of whether the medical opinions Miller submitted were supported by relevant objective medical evidence and whether those opinions were consistent with evidence from other medical and nonmedical sources.").

Moreover, while true that "the ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings[,]" the remainder of the ALJ's report does not satisfy the consistency factor with respect to Dr. Mashni's opinion. *Teixeira v. Comm'r, SSA*, No. 421CV00003SDJCAN, 2022 WL 3130859, at *9, n.15 (E.D. Tex. July 12, 2022), *report and recommendation adopted*, No. 4:21-CV-3, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022) (citation omitted). Instead, the ALJ's analysis of Dr. Mashni's opinions is conclusory, and the remainder of the report is devoid of further analysis of Dr. Mashni's opinions. In its Brief, Defendant attempts to build the "logic bridge" on the ALJ's behalf by asserting that "[t]he ALJ also cited evidence from the record that was not consistent with Dr. Mashni's opinion." *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination."). For example, Defendant notes that at a visit with North Texas Quality Care Health Clinic on October 5, 2021, an "x-ray of the left hip showed only mild osteoarthritis." (Dkt. #18 at p. 6) (citing TR 23, 554). Defendant also states that Plaintiff's "reflexes were 2+ bilaterally throughout, her thoracolumbar spine had normal curvature, and her straight leg raise

REPORT AND RECOMMENDATION - Page 15

was negative" (Dkt. #18 at p. 6) (citing TR 22, 413).[6] However, Defendant does not explain how the recited medical findings are inconsistent with Dr. Mashni's physical functional capacity report. In any event, it is the ALJ's responsibility to address the consistency factor, not Defendant's. *See Guy*, 2022 WL 1008039 at *5 (noting that the Commissioner's brief improperly "attempts to do the ALJ's job"). The ALJ's failure to do so constitutes error.[7] Accordingly, considering the entirety of the ALJ's decision, the ALJ failed to address the consistency factor when analyzing Dr. Mashni's opinion.[8]

### b. The ALJ's failure to consider the consistency factor warrants remand.

Having found that the ALJ's failure to address the consistency factor constitutes error, the court must now determine whether that error was harmful such that remand is warranted. *Miller*, 2023 WL 234773 at *3 ("[R]emand is warranted only if the ALJ's error was harmful."). "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Guy*, 2022 WL 1008039 at *5. The plaintiff bears the burden of establishing that the error was prejudicial. *Miller*, 2023 WL 234773 at *3 (citation omitted).

---

[6] Defendant also recites medical findings from Plaintiff's August 22, 2022, visit at Southwest Foot and Ankle Center, alleging that these findings are "not consistent with Dr. Mashni's opinion" (Dkt. #16 at p. 6). However, Dr. Mashni was Plaintiff's provider when she visited Southwest Foot and Ankle Center on August 22, 2022 (TR 703–706).

[7] The court notes that the check-box format of Dr. Mashni's functional capacity report does not exempt the ALJ from the Title 20 C.F.R. § 404.1520c requirements. *See Guy*, 2022 WL 1008039 at *4 (rejecting the Commissioner's argument that a doctor's opinion "should be classified as a brief or conclusory statement because it consisted solely of check-box findings without further explanation.") (citation and internal quotation marks omitted); *Hill v. Social Security Admin.*, No. 20-2397, 2022 WL 307383, at *4–5 (E.D. La. Feb. 2, 2022).

[8] Because the court finds that the ALJ erred by neglecting to consider the consistency factor, the court does not reach the supportability factor analysis.

Here, Plaintiff argues that "had the ALJ[] properly evaluated [Dr.] Mashni's opinion[,] he would have concluded that Plaintiff was unable to meet the physical demands of work at even the sedentary exertion level." (Dkt. #16 at p. 11). Pursuant to SSR 96-9p,

> Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

Titles II & XVI: *Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996). By contrast, Plaintiff argues, "[Dr.] Mashni opined [that] Plaintiff could stand/walk for less than 2 hours per 8-hour workday, and sit for less than 6 hours per workday." (Dkt. #16 at p. 11). In response, Defendant argues that "Plaintiff has failed to show that, if the ALJ had given further explanation for his persuasiveness finding of the opinion at issue, it would have changed the results of the case." (Dkt. #18 at p. 8).

The court finds that the error was harmful because it is conceivable "that a different administrative conclusion would have been reached absent the error." *Guy*, 2022 WL 1008039 at *5. Recently, the Fifth Circuit indicated that an ALJ's failure to adequately articulate the persuasiveness of a medical opinion is harmful only when he "would have adopted" the opinion had he given it "further explanation." *See Miller*, 2023 WL 234773 at *4. However, there, the ALJ actually considered the relevant medical opinions. *See id.* ("The ALJ's error was that she did not provide sufficient explanation of her consideration of the medical opinions . . . [H]er decision makes clear that she considered them. She acknowledged that the opinions contained more limiting restrictions, but she did not find them persuasive."). Here, however, the ALJ only offered a conclusory analysis of Dr. Mashni's opinions. This "boilerplate explanation of why the opinions of [Dr. Mashni] were unpersuasive casts doubt on the extent to which he actually considered

them." *See Erlandsen v. O'Malley*, No. 4:23-CV-83-ALM-KPJ, 2024 WL 898915, at *6 (E.D. Tex. Feb. 14, 2024), *report and recommendation adopted*, No. 4:23CV83, 2024 WL 897598 (E.D. Tex. Mar. 1, 2024).

Moreover, Dr. Mashni concluded that Plaintiff could stand/walk for less than two hours per eight-hour workday and sit for less than six hours per workday (TR 589). No medical evidence was introduced to contradict this finding.[9] Absent evidence or an explanation by the ALJ to the contrary, it appears that Plaintiff has demonstrated that, had the ALJ properly considered Dr. Mashni's opinion, the ALJ may have determined that Plaintiff was disabled due to not being able to perform a sedentary job.

The regulations note that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" SSR 96-9P. However, the regulations also state that "[i]f the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, *consideration must still be given* to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." SSR 96-9P (emphasis added). Here, none of the ALJ's hypotheticals addressed whether there was other work in the national economy that Plaintiff would be able to do if the ALJ determined that Plaintiff had an RFC for less than the full range of sedentary work in light of Dr. Mashni's opinion (TR 49–53). The court will not speculate on whether proper consideration of Dr. Mashni's opinions would alter the ALJ's analysis. *See Luckett*,

---

[9] In fact, the ALJ references numerous other medical records consistent with Dr. Mashni's conclusion regarding Plaintiff's mobility. *See* (TR 22) (referring to North Texas Quality Care Health Clinic, which determined that Plaintiff had "lumbosacral tenderness" and "back pain with left-sided sciatica"); (TR 23) (referring to North Texas Quality Care Health Clinic, which determined that Plaintiff had "right-side sciatica" and "neuropathy"); (TR 23) referring to Medical City Lewisville which determined that Plaintiff had "mild osteoarthritis" in her left hip); (TR 23) (referring to PA Vencill's report which stated that Plaintiff had a "degenerative lumbar disc"). While the court does not comment on the persuasiveness of this evidence, the fact that the ALJ rejected Dr. Mashni's opinion without addressing the consistency factor in light of the other evidence weighs in favor of remand.

2021 WL 5545233 at *5 ("Because conflicts in the evidence are for the Commissioner and not the courts to resolve, I conclude that it is conceivable that the ALJ could make a different administrative decision."). Accordingly, the ALJ's failure to properly analyze the persuasiveness of Dr. Mashni's opinion resulted in harmful error. *See Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) (finding that the ALJ's error was harmful because the plaintiff's "substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three"); *Erlandsen*, 2024 WL 898915 at *6 (finding harmful error when "the ALJ's boilerplate explanation of why the opinions of Dr. Ahn and Dr. Ayoade were unpersuasive casts doubt on the extent to which he actually considered them"); *Edwards v. Kijakazi*, No. 4:22-CV-00520, 2023 WL 2386748, at *6 (S.D. Tex. Mar. 6, 2023), *report and recommendation adopted sub nom. Edwards v. Comm'r of Soc. Sec. Benefit*, No. 4:22-CV-00520, 2023 WL 2616018 (S.D. Tex. Mar. 22, 2023) (holding that the ALJ's error was harmful because "[h]ad the ALJ applied the proper framework for analysis, she may have reached a different RFC determination that included more severe mental limitations detailed in Dr. Hardaway's opinions"); *Guy*, 2022 WL 1008039 at *5 (finding that "the ALJ's reliance on certain evidence does not render a different outcome inconceivable on remand" and accordingly, "[b]y erroneously deviating from § 404.1520c's requirements, the ALJ reached a conclusion the Court cannot affirm"); *Ramirez v. Saul*, SA-20-CV-00457-ESC, 2021 WL 2269473, at *7 (W.D. Tex. June 3, 2021) (finding harmful error because "[h]ad the ALJ found Plaintiff to suffer from standing and walking limitations of any kind, Plaintiff would be unable to perform . . . light work. The ALJ might have therefore concluded that Plaintiff is unable to perform his past relevant work, which was performed at a light exertional level"); *Luckett*, 2021 WL 5545233 at *4 (finding that the ALJ committed harmful error when "the ALJ's overall treatment of Dr. Najam seems to undercut the logic bridge between the evidence and the ALJ's

persuasiveness finding"). Thus, the court recommends that this case be remanded for further consideration.

## VI. CONCLUSIONS AND RECOMMENDATION

For the foregoing reasons, the court recommends the Commissioner's decision be **REVERSED and REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 26th day of August, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE